No. 3574

Second Circuit

————

STRINGER v. THE NATIONAL BENEFIT LIFE INSURANCE CO. OF WASHINGTON, D. C.

————

(November 18, 1929. Opinion and Decree.)
(December 31, 1929. Rehearing Refused.)

————

Lewell C. Butler, of Shreveport, attorney for plaintiff, appellee.

John B. Files, attorney for defendant, appellant.

REYNOLDS, J. This is a suit upon a contract of life insurance.

The plaintiff alleged that defendant issued, on October 24, 1927, its policy of insurance on the life of Rubin Simmons, and thereby promised, in consideration of certain premiums, paid and thereafter to be paid, to pay to plaintiff $500 at his death, if he died more than nine calendar months thereafter or three-fourths of that amount if he died after nine calendar months and within one year from the issuance of the policy.

She also alleged that Rubin Simmons died on October 2, 1928, and that she was his aunt, that she had duly furnished defendant with proof of the death of the insured, and that it had refused payment of $375 owing on the policy notwithstanding amicable demand.

The prayer was for judgment for $375 with legal interest thereon from judicial demand.

The defendant filed an exception of no right and no cause of action, and after trial the exception was overruled.

Thereupon defendant answered, setting up several defenses, all of which, except one, namely, that it was not alleged or proved that plaintiff had any insurable interest in the life of the insured, were abandoned on trial and are not urged in this court.

On these issues the case was tried and there was judgment in favor of the plaintiff as prayed for and the defendant appealed.

OPINION

EXCEPTION OF NO CAUSE OF ACTION

The exception was based upon the theory that in an action upon a life insurance policy it is necessary, in order to show a right of action, for the plaintiff to allege facts tending to show that she had an insurable interest in the life of the insured, and that an allegation that the insured was the nephew of the plaintiff is insufficient to show such interest.

Where one insures his life for the benefit of another, it is not necessary, in an action on the policy, for the beneficiary to allege that he had an insurable interest in the life of the insured.

37 Corpus Juris, page 608, paragraph 396.

ON THE MERITS

The only reason shown by the evidence and assigned here for refusal to pay the amount stipulated in the policy is that the plaintiff had no insurable interest in the life of the insured.

It was alleged in the petition and the evidence showed that plaintiff was the aunt of the insured, and the evidence also showed that the mother of the insured died when he was two years old and the plaintiff took charge of his personal welfare during his adolescence until he was able to earn enough money to pay for his life and to take care of himself, and that he had contributed wearing apparel and money to his aunt's support from the time he became able to do so.

The plaintiff testified:

"Q. After the young man approached manhood, did he help you and your children?
"A. Yes, sir; he would buy the children a pair of shoes; or anything he could so, he would do it.

"Q. Did you pay part of the funeral expenses?

"A. Yes, sir; I did.

"Q. How much of that did you pay?

"A. I think that was $111.50. The total expense was $223.00, and I paid half of it.

"Q. How many years did you help him as a child?

"A. Oh, I helped him all his life until he was grown; all his life.

"Q. Then when he got grown, can you estimate about how much he gave you? All told, for you and your children; approximately?

"A. No, sir; just any time he would come in he would help me.

"Q. Guess at it; you know about what it was.

"A. He helped me more than for five years.

"Q. Just about how much did he probably give you in a year?

"A. Well, if the truth be known, I expect that it amounted to fifty dollars, or more, a year. Gave me money at different times.

"Q. Fifty dollars a year or more?

"A. Yes, sir, more; because I remember his paying $5 for a pair of shoes for me."

Elnora Simmons testified that she was the widow of Rubin Simmons, and—

"Q. To what extent, if at all, did your husband assist Effie Stringer and her children, towards their support, financially?

"A. He helped her in many ways; helped her with the children; when they needed anything he would get it for them.

\*      \*      \*      \*      \*      \*      \*

"Q. What relation, or affection, did your husband have for his aunt, Effie Stringer?

"A. He always had the relation just as his mother; knew no other mother.

"Q. Rubin Simmons' mother died when?

"A. His mother died when he was two years old.

"Q. And after that Effie Stringer was practically his mother, you say?

"A. Yes, sir.

\*      \*      \*      \*      \*      \*      \*

"Q. Then, when he got old enough to make money, he began to contribute to her support and her children's support?

"A. Yes, sir; he did.

"Q. Did Effie Stringer pay the funeral expenses of Rubin Simmons?

"A. She paid half of it.

"Q. How much was that?

"A. She paid $112.00 and I paid the other half.

"Q. Can you estimate about how much your husband helped Effie Stringer and her children in later years or since you married him?

"A. I do not know, sir; it seems like three or four hundred dollars worth since I have known him. He always helped her and her children."

The blood relationship existing between plaintiff and the insured and his conduct toward her from the time he reached manhood was such as to justify reasonable expectations of benefit on her part from his continued existence and to give her an insurable interest in his life.

In Rombach vs. Insurance Co., 35 La. An. 233, 48 Am. Rep. 239, it was held that a son-in-law had an insurable interest in the life of his mother-in-law, the court saying:

"Even though such legal claim (of the beneficiary upon the insured for services or support) does not exist, yet where from the personal relations of the two, and the kindness and good feeling displayed by the insured to the insuree, the latter has a reasonable right to expect some pecuniary advantage from the continuance of the life of the former or to fear loss from his death, an insurable interest will be held to exist."

And in Cronin vs. Insurance Company, 20 R. I. 570 (40 Atl. 497, 498), holding that an aunt had an insurable interest in the life of her niece, living with her at different times from early childhood, and whom she supports, the court said:

"The principle of these and other like cases is that the interest does not depend upon any liability for support, nor upon any pecuniary consideration, nor even upon kinship. It may be for the benefit of the old or the young, where the relation between the parties is such as to show a mutual interest, and to rebut the presumption of a mere wager. The contract is complete and legal in itself, and, when considerations of public policy do not prohibit its enforcement, there is no reason why it should not be carried out. The declaration in this case shows that the plaintiff's claim is not objectionable on the grounds of public policy. It shows that the relation of the plaintiff and her niece had been of such a character that each had reason to rely upon the other in case of need. Should the younger die first, the help and care which might have been expected from her in the declining years of the aunt could only be supplied by insurance on her life. This is no more speculation than a husband's provision for his wife in the same way. It is natural and reasonable, and in accordance with modern business methods. In short, it is security for an insurable interest. We therefore think that the contract set out in the declaration is valid, since it falls within the proper line of distinction between valid contracts, where there is mutual interest, and invalid contracts, which are evidently mere speculation."

The facts of that case were very similar to those of the case at bar.

Under the law and the evidence the judgment appealed from is correct and accordingly it is affirmed.